**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

STEVEN HELLERSTEIN, *et al.*

Plaintiffs,

v.

DESERT LIFESTYLES, *et al.*,

Defendants.

Case No. 2:15-cv-01804-RFB-CWH

**<u>ORDER</u>**

## I.    INTRODUCTION

This case, removed from state court in 2015, involves a dispute between two groups of plaintiffs and two groups of defendants regarding a golf course property located in a planned community in Las Vegas, Nevada. After a long and protracted series of events, including an appeal to the Ninth Circuit, the Court ordered jurisdictional discovery to determine the citizenship of Defendant LLCs and Intervenor Defendant LLC. At a hearing on October 27, 2017, the Court took the matter under submission, and this order now follows.

## II.    PROCEDURAL HISTORY

### a.  Events Leading Up to the Joinder of Stoneridge

The parties are familiar with the elaborate procedural development of this case. However, the Court summarizes the relevant events with regard to its determination of subject matter jurisdiction. This case was initially filed in the Eighth Judicial District Court for Clark County, Nevada by several homeowners of properties in the common interest community Silverstone Ranch (collectively, "Homeowner Plaintiffs") on September 7, 2015. In the Complaint,

Homeowner Plaintiffs allege that Defendants Desert Lifestyles, LLC ("Desert Lifestyles") and Western Golf Properties, LLC ("Western Golf") (collectively, "Desert Lifestyles Defendants") violated an agreement to maintain the golf course property around which the Silverstone Ranch community was formed. Homeowner Plaintiffs sought declaratory and injunctive relief to compel Desert Lifestyles, as owner of the golf course, to maintain and operate the golf course. Plaintiff-in-Intervention Silverstone Ranch Community Association ("Intervenor Plaintiff") filed a Complaint-in-Intervention on September 11, 2015. On September 18, 2015, Desert Lifestyles Defendants removed the case to federal court, on the grounds that both Desert Lifestyles and Western Golf were California limited liability companies. The Petition for Removal included an Ex-Parte Application for Temporary Restraining Order ("TRO").

Homeowner Plaintiffs filed a Motion to Remand to state court on September 23, 2015, arguing that Desert Lifestyles Defendants failed to demonstrate diversity of citizenship, as the Petition for Removal failed to indicate who were the members of the respective LLCs. The following two days, the Court held hearings on the Ex-Parte Application for TRO and granted the TRO against Desert Lifestyles Defendants. Beginning its jurisdictional inquiry, the Court also ordered Desert Lifestyles Defendants to produce information about their members as of the date of removal. The Court held several hearings on the request for preliminary injunction, which the Court granted on November 10, 2015.[1] Desert Lifestyles Defendants appealed this decision to Ninth Circuit.

On December 15, 2015, while Desert Lifestyles Defendants' appeal was pending, Desert Lifestyles sold the golf course property to Stoneridge Parkway, LLC ("Stoneridge"). Desert Lifestyles Defendants filed a Notice claiming that, due to the sale, they no longer had an interest in the golf course property within Silverstone Ranch and therefore were not obligated to attend the hearing previously set for December 17, 2015 regarding proposals for restoring the golf course. The Court ordered Desert Lifestyles to produce documents relating to the sale of the golf course for *in camera* review. On December 17, 2015, prior to the scheduled hearing, Homeowner

---

[1] The Order granting the request for preliminary injunction took effect when Plaintiffs' bond posted, November 16, 2015.

Plaintiffs filed an Emergency Motion requesting sanctions against Desert Lifestyles.[2] Intervenor Plaintiff also filed several Emergency Motions, requesting, among other relief, binding successors-in-interest to the preliminary injunction and adding Stoneridge as a party to the action. During the hearing on the same day, the Court granted Intervenor Plaintiff leave to file an Amended Complaint, including Stoneridge a party. The Court additionally ordered Plaintiffs to file an Amended Motion for Sanctions by December 24, 2015.[3]

Before an Amended Complaint was filed adding Stoneridge as a party to the action, Intervenor Plaintiff filed a Notice of Bankruptcy as to Stoneridge. Homeowner Plaintiffs and Desert Lifestyles Defendants continued to engage in voluminous briefing regarding sanctions and discovery issues. On January 7, 2016, the Court clarified its prior ruling and stated that it did not find that it had jurisdiction to join any additional party – i.e., Stoneridge – absent the filing of an Amended Complaint with proof of service on the new party. The same day, the Court also granted Homeowner Plaintiffs' oral motion to withdraw their Motion to Remand without prejudice.

The Court granted the Desert Lifestyles Defendants' Motion to Dismiss without prejudice on September 30, 2016. The case was stayed pending a decision from the Ninth Circuit and resolution of the bankruptcy proceeding as to Stoneridge.

On May 8, 2017, the Ninth Circuit entered the Mandate to its Memorandum, denying Desert Lifestyle Defendants' appeal as moot, but finding that there was a "serious question as to whether the requirements for diversity jurisdiction [were] satisfied," based upon the Complaint and the evidence in the record. The Ninth Circuit concluded that it would "leave it to the district court to conduct the proceedings and consider the evidence it deems appropriate" to determine diversity jurisdiction. The Court issued an Order on the mandate on May 12, 2017.

### b. The Instant Motions

Intervenor Plaintiff filed its Amended Complaint on April 13, 2017, adding Stoneridge as

---

[2] Homeowner Plaintiffs previously filed a sealed Motion for Sanctions in support of their Motion to Remand, seeking to be repaid the costs of the efforts to discover Desert Lifestyles Defendants' citizenship. (ECF No. 47).

[3] After an amended motion for sanctions was filed, the Court issued a minute order granting the motion for sanctions on September 30, 2016; a written order elaborating on the ruling was to follow. (ECF No. 198).

a Defendant-in-Intervention. (ECF No. 211). Intervenor Plaintiff subsequently filed several Motions to Amend the Complaint. (ECF Nos. 212, 213, 276, 277). Stoneridge filed the instant Motion to Remand or alternatively Motion to Dismiss on April 27, 2017. (ECF No. 223). On April 28, 2017, Desert Lifestyles Defendants filed a Motion to Dismiss for Lack of Jurisdiction (ECF No. 231) and Joinder to Stoneridge's Motion to Remand (ECF No. 233), both of which were later withdrawn (ECF No. 285). Stoneridge additionally filed a Motion to Dismiss or alternatively Motion to Compel Arbitration (ECF No. 240). Intervenor Plaintiff filed Responses to the Motion to Remand and Motions to Dismiss on May 15, 2017 (ECF Nos. 247, 248) and May 19, 2017 (ECF No. 249). Stoneridge filed its Replies on May 22, 2017 (ECF Nos. 250, 251) and May 26, 2017 (ECF No. 253). Intervenor Plaintiff filed a Partial Motion for Summary Judgment on the issue of enforcement of the Golf Course Agreement on July 24, 2017 (ECF No. 261). Stoneridge filed an Emergency Motion to Stay or Defer Response on the Partial Motion for Summary Judgment (ECF No. 275).

Further voluminous briefing, including several emergency motions, prompted the Court to hold a series of hearings on the matter. The Court held a hearing on August 3, 2017, in which it outlined the parameters for jurisdictional discovery on the record. On September 8, 2017, at a second hearing on the matter, the Court ordered the deposition of the person most knowledge about the information in Desert Lifestyles' possession regarding the sales transaction involving the golf course property. The Court provided further instruction on jurisdictional discovery at a hearing on October 5, 2017. On October 27, 2017, the Court held an evidentiary hearing on jurisdictional issues and heard testimony from Danny Modaberpour ("Modab"), the majority owner and manager of Stoneridge.

### III.     LEGAL STANDARD

#### a.  Subject Matter Jurisdiction and Remand Generally

Diversity jurisdiction extends to "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . [c]itizens of different States." 28 U.S.C. § 1332(a)(1). If the district court has not entered final judgment, and it appears that the court does not have subject

matter jurisdiction, the case must be remanded to state court. 28 U.S.C. § 1447(c). "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court," 28 U.S.C. § 1447(e); see also Yniques v. Cabral, 985 F.2d 1031, 1036 (9th Cir. 1993), disapproved of on other grounds by McDowell v. Calderon, 197 F.3d 1253, 1255 n.4 (9th Cir. 1999) (holding that, once a district court has permitted joinder of a non-diverse party, its only option under 28 U.S.C. § 1447(e) is to remand the case to state court). "Where doubt regarding the right to removal exists, a case should be remanded to state court. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (footnote omitted).

To invoke a federal court's limited subject matter jurisdiction, a complaint need only provide "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Ordinarily, the court will accept the plaintiff's factual allegations as true unless they are contested by the defendant. Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). A defendant may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). If subject matter jurisdiction is challenged, the burden is on the party asserting jurisdiction to establish it. In re Dynamic Random Access Memory Antitrust Litig., 546 F.3d 981, 984 (9th Cir. 2008) (citations omitted). Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. Id. at 984-85.

### b. Membership of LLCs for the Purpose of Determining Jurisdiction

The Supreme Court has recently held that, for the purpose of diversity jurisdiction, the members of an unincorporated business entity are "its owner[s] or the several persons composing such [entity]." Americold Realty Trust v. Conagra Foods, Inc., 136 S.Ct. 1012, 1015 (2016) (citations and quotation marks omitted). In Americold, where the business entity was not a corporation but the record was unclear as to who the entity's members were, the Court looked to Maryland law to determine the citizenship of the entity. Id. at 1015-16.

### c. Transfers of Interest to Thwart Diversity Jurisdiction

A district court shall not have jurisdiction of a civil action in which any party, by

assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court. 28 U.S.C. § 1359. "[T]here is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner. In either event, another party is deprived of a forum to which he would otherwise be entitled, and the jurisdiction which Congress conferred upon the federal courts is manipulated." Attorneys Tr. v. Videotape Computer Prod., Inc., 93 F.3d 593, 598 (9th Cir. 1996) (citation omitted). In Attorneys Trust, the Ninth Circuit set forth a number of factors to consider in determining whether an assignment or transfer of interest is improper or collusive to create federal jurisdiction: whether there existed (1) "good business reasons for the assignment;" (2) a prior interest in the item on the part of the assignee; (3) a partial or complete assignment; or (4) "an admission that the motive [behind the transfer] was to create jurisdiction." 93 F.3d at 595-96 (citations omitted). The Court found that the objective factors – those other than the "motive" element – were most important. Id. at 596. "While the courts are interested in motive because it can shed a great deal of light on otherwise ambiguous circumstances and can even be virtually controlling in some situations, the main focus is usually upon the reality of the transaction itself." Id. at 597.

The Court in Attorneys Trust observed that there are far fewer cases addressing the question of assignments of interest which *destroy* jurisdiction. Id. The Court noted: "Assignments of that kind [to destroy federal jurisdiction] are not specifically covered by 28 U.S.C. § 1359. However, what modern authority there is also focuses on the reality of the transaction. Motive, again, is a factor, but courts have remained sensitive to and concerned by manipulations of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case." Id. The Court also positively cited a Fifth Circuit case, which held: "Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact." Id. at 598 (quoting Grassi v. Ciba-Geigy, Ltd., 894 F.2d 181 (5th Cir. 1990)).

**d. "Statelessness" of Entities**

Statelessness, for purposes of the federal diversity jurisdiction statute, 28 U.S.C. § 1332(a)(3), has been found by the Supreme Court when an alien individual or entity lacks United States citizenship, or a United States citizen lacks a domicile in any state. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828-29 (1989). Ninth Circuit cases discussing the issue of statelessness and diversity jurisdiction have similarly applied the term to foreign parties who are not domiciled in any state or do not have U.S. citizenship. See, e.g., Louisiana Mun. Police Emps. Ret. Sys. v. Wynn, 829 F.2d 1048 (9th Cir. 2016) (finding that a defendant was "stateless" for the purpose of 28 U.S.C. § 1332(a)(3) because she was a U.S. citizen with no domicile, therefore destroying diversity); Brady v. Brown, 51 F.3d 810 (9th Cir. 1995) (finding no diversity jurisdiction where a party was a United States citizen domiciled in Mexico); Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088 (9th Cir. 1983) (finding that diversity jurisdiction could not be maintained in an action involving an alien plaintiff domiciled in New York but without United States citizenship).

## IV.    DISCUSSION

### a.  Stoneridge's Motion to Remand

The Court has reviewed the facts in the record, including Modab's testimony during the October 27, 2017 hearing, and considered the factors set forth in Attorneys Trust, and now finds Modab did not create Stoneridge Parkway Investors, Inc., a Nevada corporation and member of Stoneridge, to collusively avoid or thwart this Court's diversity jurisdiction.

The Court finds that Modab articulated good business reasons for creating the corporation – namely, to quickly and inexpensively attract investors to an investment opportunity in Stoneridge. The Court finds Modab's testimony to be credible with respect to his understanding of the benefits of incorporating in Nevada, in the context of his prior experience and interactions with the Intervenor Plaintiff which included the potential for settlement depending upon his ability to successfully attract investors.  The Court also finds that objectively it was a sound decision to create a Nevada corporation as a means of attracting investment to address the serious financial issues associated with the golf course.  The timing of the creation of the Nevada entity is supported

objectively by the immediate need for capital for the development of the golf course or development of some type that would lead to a resolution of the dispute. Adding a Nevada corporation as member of Stoneridge, even if it defeated the jurisdiction of this Court, would not have meant (and does not mean) the end to litigation regarding the golf course. In addition to these realities of the transaction, the Court finds that Modab had no improper motive to assign interest into Stoneridge Parkway Investors, Inc., and that Modab acknowledges that he may be exposed to liability even if the case is remanded.

A corporation is a citizen of the state in which it is incorporated, and of the state in which its principal place of business is located. <u>Johnson v. Columbia Props. Anchorage, LP</u>, 437 F.3d 894, 899 (9th Cir. 2006) (citing 28 U.S.C. § 1332(c)(1)). Because one of the members of Stoneridge, Stoneridge Parkway Investors, Inc., was a Nevada citizen at the time Stoneridge was joined as a party to Intervenor Plaintiff's Amended Complaint, complete diversity was destroyed. Therefore, pursuant to 28 U.S.C. § 1447(e), the Court grants Stoneridge's Motion to Remand. (ECF No. 223).

### b. Sanction and Fee Award Determinations as to Desert Lifestyles Not Remanded

As this case will be remanded to the Eighth Judicial District Court, all pending motions are remanded. The Court does not remand to state court the determination of the amount of sanctions and fees to be awarded pursuant to this Court's Order of September 30, 2016 granting a motion for sanctions (ECF No. 136) and two motions for fees (ECF Nos. 137 and 165). The Court first addresses the issue of its subject matter jurisdiction at the time the order issued.

### i. California Law Regarding Limited Liability Companies

Under the California Revised Uniform Limited Liability Company Act ("CRULLCA"), a limited liability company requires one or more persons to execute and file articles of organization with the Secretary of State, on a form prescribed by the same. Cal. Corp. Code § 17702.01(a). Under the CRULLCA, there are only two forms of an LLC: a "member-managed" LLC or a "manager-managed" LLC. Cal. Corp. Code §§ 17702.01 and 17704.07(a). An LLC is presumed to be a member-managed LLC unless the articles of organization indicate it will be a manager-managed LLC. Cal. Corp. Code § 17704.07(a). Either form, however, requires the existence of at

least one if not more "members," since only a "member" may choose the "manager" for an LLC. Cal. Corp. Code § 17701.02(n), (o), (s). Under the CRULLCA, a "manager" is defined as "a person that under the operating agreement of a manager-managed limited liability company is responsible, alone or in concert with others, for performing the management functions." Cal. Corp. Code § 17701.02(n). A "manager" for a manager-managed LLC may only be chosen "by the consent of a majority of the members." Cal. Corp. Code § 17704.07(c)(5). The "operating agreement" that governs the manager's conduct and the activities of the LLC does not have to be a written document. Cal. Corp. Code § 17701.02(s). It can be an "oral" or "implied" agreement. Id. The only requirement is that it be an "agreement" of all the "members" of the LLC. Id. Thus, a manager of a manager-managed California LLC may only be chosen as manager by members of the LLC and may only manage the LLC pursuant to an agreement of all members of the LLC.

The CRULLCA does not expressly or impliedly establish a procedure for creating a memberless LLC. While an LLC may be dissolved pursuant to Section 17707.02 after losing members, presumably to death, inactivity or abandonment, the CRULLCA has no procedure for creating a manager-managed LLC without members.

### ii. Diversity Jurisdiction in This Case

The Court finds that it did possess subject matter jurisdiction over this case until the addition of Stoneridge.

The basis for subject matter jurisdiction in this case is diversity jurisdiction, under 28 U.S.C. § 1332(a)(1). In cases such as this, where entities rather than individuals are litigants, diversity jurisdiction depends upon the form of the entity. Defendant Desert Lifestyles, LLC, "like a partnership, is a citizen of every state of which its owners/members are citizens." Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). The Supreme Court has declined to apply an express definition to the term "members" for purposes of determining the citizenship of unincorporated entities like LLCs. As the Supreme Court recently explained: "Despite our oft-repetition of the rule linking unincorporated entities with their members, we have never expressly defined the term. But we have equated an association's members with its *owners or the several persons composing such association*." Americold Realty Trust v. Conagra Foods,

Inc., 136 S.Ct. 1012, 1016 (2016) (citations omitted) (emphasis added). When the form of an unincorporated entity does not clearly identify its members, courts must look to the entity's "owners or the several persons composing" the entity. Id.

Based upon the entire record in this case, the Court finds the following facts. Desert Lifestyles LLC is organized under California law. Upon the formation of Desert Lifestyles, its articles of organization indicated that it would be a manager-managed LLC with one manager. Desert Lifestyles' manager upon formation was Ron Richards, who is a California resident. Richards was directed to form Desert Lifestyles by another individual Jon Brooks, a California resident. Brooks was Desert Lifestyles' sole member. Desert Lifestyles was created as a single purpose entity with the purpose being the purchase of the golf course in Las Vegas. At the time of the removal of this case, the funding for Desert Lifestyles' purchase of the golf course came from Brooks. Brooks loaned the funds to Desert Lifestyles to purchase the golf course and was entitled to any profit or revenue that accrued to Desert Lifestyles. Other than Richards and Brooks, no other person or entity was entitled to receive distributions of money from Desert Lifestyles or direct its operations at the time of removal. The Court finds that at the time of the removal of the case that Richards was the manager of Desert Lifestyles acting at the direction of its sole member Brooks. Thus, the record demonstrates undisputedly that the only possible owners or members of or persons associated with Desert Lifestyles for purposes of jurisdiction were California residents. This Court thus had jurisdiction when it granted the motion for sanctions.

The Court is not persuaded by the "stateless" and "memberless" arguments Desert Lifestyles has advanced at various points in the litigation. As far as this Court is aware, as noted above, "statelessness" has only been addressed in the Ninth Circuit in the context of foreign litigants lacking a domicile or citizenship in the United States. The principle has not been extended to LLCs in California. Moreover, the Court notes that the designation of members or owners for the purpose of determining an entity's citizenship for diversity jurisdiction purposes does not depend per se or necessarily on the corresponding state law determination. See generally id. at 1016 (holding that state law provides a general basis for understanding who the owners or beneficiaries of a trust are for purposes of diversity). Indeed, it makes sense that Supreme Court

would not so explicitly predicate citizenship for diversity on state law, because states could thus determine who might and might not be subject to diversity jurisdiction which would defeat the purpose for which Congress enacted the diversity statute. Id. at 1015.

Based upon the findings above, the Court continues to retain jurisdiction over the imposition of sanctions against Desert Lifestyles. However, even if the Court were to find that it lacked jurisdiction over Desert Lifestyles at some point after the case was removed, the Court nonetheless retains the ability to enforce its orders regarding sanctions even after the case is remanded. As the Supreme Court has explained:

> [I]t is well established that a federal court may consider collateral issues after an action is no longer pending. . . [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. . . . Such an order implicates no constitutional concern because it does not signify a district court's assessment of the legal merits of the complaint. . . . It therefore does not raise the issue of a district court adjudicating the merits of a case or controversy over which it lacks jurisdiction.

Willy v. Coastal Corp., 503 U.S. 131, 137 (1992). The Court previously deferred issuing its order on sanctions until the issues regarding jurisdiction over Stoneridge had been resolved. Regardless of whether the Court had jurisdiction at the time it entered a preliminary injunction order against Desert Lifestyles, the Court has the authority to now finalize its rulings as to sanctions and fees to be awarded as such determinations regarding the aforementioned motions would relate to conduct before the Court and not the merits of the underlying action. See also Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997), overruled on other grounds by Fossen v. Blue Cross and Blue Shield of Montana, Inc. (9th Cir. 2011) ("A [final] determination [of a lack of subject matter jurisdiction] does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction") (citations omitted.). The Court's order on sanctions will be issued separately.

Finally, the Court notes that there is no issue as to the amount in controversy at the time this case was removed.  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).  It is undisputed that the golf course

which is the subject of this litigation was purchased by Desert Lifestyles for over $3.5 million. Additionally, attorneys' fees may be used to satisfy the amount in controversy, since the underlying state law in Nevada permits the award of such fees. See Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1155 (9th Cir. 1998); see also N.R.S. § 18.010. The Court finds that the fees for such a complex case with so many different parties would also lead to attorneys' fees that would satisfy the amount in controversy.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Intervenor Defendant's Motion to Remand (ECF No. 223) is GRANTED.

**IT IS FURTHER ORDERED** that all remaining motions shall be remanded to the state district court.   The Clerk of the Court is instructed to close this case.

**DATED:** March 31, 2018.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**